# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

Creig R. Eugene, Sr., et al.                     Civil Action No. 05-00326

versus                                           Judge Tucker L. Melançon

Sidney J. Hebert, et al.                         Magistrate Judge Hill

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendant Sidney Hebert [Rec. Doc. 19], a Motion for Summary Judgment filed by defendants Cargill, Inc. and David Swisher [Rec. Doc. 21], plaintiffs' Opposition [Rec. Doc. 25], and defendants' respective Reply Memoranda [Rec. Docs. 31 & 34]. For the following reasons, the defendants' motions will be granted as to the plaintiffs' federal law claims and denied as to the plaintiffs' state law claims.

## *I. Background*

The present suit arises out of the arrests of plaintiffs Creig Eugene, Gerald Robertson, and Juanita Smith on March 5, 2004. The undisputed facts reveal the following. On or about February 27, 2004 defendant David Swisher (Swisher) returned home from a vacation and found a small doll with an ice pick stuck in its back with the words "Renice," "Watch your back bitch," "David Swisher," "Vo Do,"

1

and "kill" written on it. (*Complaint*, ¶ 7; *Hebert Memorandum*, p. 1). Swisher notified the Iberia Parish Sheriff's Department and an incident report on the event, bearing B-02804-04, was generated by the Iberia Parish Sheriff's Department. (*Hebert Memorandum*, p. 2). Iberia Parish Sheriff's Department Deputy Sheriff Andrew Brashear opened an investigation and based on an interview with Swisher, learned that the men whose names appeared on the doll were supervisors at the Cargill plant located in Avery Island, Louisiana.[1] (*Cargill Memorandum*, p. 2). Through the interview, Deputy Sheriff Brashear also learned that prior to leaving for vacation, Swisher interviewed plaintiff Creig Eugene, a subordinate employee at Cargill, in conjunction with a threatening message placed in the locker of a fellow worker. (*Id*).

After the incident report was prepared, Agent Salvatore J. Buscaino of the Iberia Parish Sheriff's Department followed up on the investigation of the incident. (*Id*). Agent Buscaino obtained hand-writing samples and photographs from Cargill personnel files and interviewed various Cargill employees. (*Hebert Memorandum*, p. 3). Throughout the investigation, Cargill representatives made available its facilities, gave the Iberia Parish Sheriff's Department access to company records,

---

[1] David Swisher is employed as the Mine Superintendent for Cargill at the Avery Island salt mine. Renice Labit is a Shift Supervisor.

identified the plaintiffs as they changed shifts, and posted a reward notice for anyone who came forward with information relevant to the incident. (*Plaintiffs' Opposition*, p. 12).

On or about March 5, 2004, Agent Buscaino returned to the Avery Island plant and requested to interview four Cargill employees, the three plaintiffs and Kimry Ward. (*Cargill Memorandum*, p. 3). Before approaching the employees, Agent Buscaino disclosed the nature of his investigation to attorneys for Cargill and for the workers' union, the International Chemical Workers Union Council of the United Food and Commercial Workers Union, Local 27c. (*Cargill Reply*, p. 4; *Floyd Richard Affidavit*). Renice Labit, the plaintiffs' supervisor, identified the three plaintiffs as they completed their shifts and called in the fourth employee, Kimry Ward, from home. (*Cargill Memorandum*, p. 3). All four employees met with Agent Buscaino and another Iberia Parish Sheriff's deputy in a conference room located at the Cargill facility. (*Id*). They were arrested, *mirandized* and then transported to the Iberia Parish Sheriff's Department in two patrol cars for station-house interrogations. (*Hebert Memorandum, Exhibit B*, pp. 24-27; *Buscaino depo.*, p. 53). While at the Sheriff's Department, all four employees were questioned regarding the incident with the voodoo doll; each denied involvement, and each submitted to DNA testing. (*Id*). No charges were subsequently filed against any of the four Cargill employees and

3

they were returned to their vehicles at the Cargill plant about four hours after having left with Agent Buscaino. (*Complaint*, ¶ 14).

On January 20, 2005 Creig Eugene, Gerald Robertson, and Juanita Smith filed the instant action in the Sixteenth Judicial District, Iberia Parish, Louisiana against Sheriff Sidney Hebert in his official capacity as Sheriff of Iberia Parish on the grounds that he violated their federal constitutional rights to be free from unreasonable seizures.[2] (*Complaint*, ¶ 15). Specifically, the plaintiffs aver that they were "falsely arrested, falsely imprisoned and improperly detained" and were "required against their will to submit DNA for analysis." (*Id.* at ¶¶ 17, 15). Plaintiffs further allege that Sheriff Hebert and the Iberia Parish Sheriff's Department violated their civil rights, under the color of law, pursuant to 42 U.S.C. § 1981. (*Complaint*, ¶ 21). Additionally, the plaintiffs asserted state law claims against Sheriff Hebert, David Swisher, and Cargill, Inc. (collectively "Defendants") for false arrest, false imprisonment, defamation, embarrassment, humiliation, collusion and mental anguish. (*Id*). Defendants now seek dismissal of the plaintiffs' actions on the grounds that probable cause existed at the time of arrest; that the plaintiffs' § 1981 claims fail to state a cause of action; that plaintiff Creig Eugene should be judicially estopped from pursuing his claims for failing to disclose a pending bankruptcy, and;

---

[2] Defendants removed this matter on February 22, 2005.

4

that the plaintiffs' state law claims against Cargill and Swisher are factually unsupported.

## II. *Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *See Celotex Corp.,* 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *see also Little*, 37 F.3d at 1075. If no issue of fact is presented and

if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Law and Analysis

#### A. Plaintiffs' Section 1981 Claims

The plaintiffs never develop their § 1981 claims beyond the initial reference made in the state court petition.[3] In reviewing § 1981 actions, the Fifth Circuit applies the same burden shifting analysis prescribed in *McDonnell Douglas*, 411 U.S. 792 (1973), as it does for employment discrimination claims brought under Title VII. *See Sreeram v. Louisiana State University Medical Center-Shreveport*, 188 F.3d 314, 322 (5th Cir. 1999). Under the *McDonnell Douglas* analysis, a "plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence." *Greene v. Daimler-Chrysler Services of North America*, 128 Fed. Appx. 353, 356 (5th Cir. 2005). Based on the record, the plaintiffs have failed to present

---

[3] 42 U.S.C. § 1981 provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

even a soupçon that they were treated in a discriminatory manner, based on race, by any of the defendants. Indeed, the investigation focused on two African-American men, Creig Eugene and Gerald Robertson, a Caucasian woman, Juanita Smith and Kimry Ward, a male whose ethnicity the Court could not determine based on the record. (*Plaintiffs' Opposition, Exhibit A*, p. 35). Thus, the plaintiffs have failed to prove their *prima facie* case of discrimination. Accordingly, the Court will dismiss the plaintiffs' § 1981 claims with prejudice.

### B. *Plaintiffs' Section 1983 Claims*

Although not referred to as such, the plaintiffs have apparently raised § 1983 claims in their state court petition. The Civil Rights Act of 1871, 42 U.S.C. § 1983, provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured...." Section 1983 does not create any substantive rights, but rather, it provides a remedy for the rights that it designates. *See Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). Accordingly, the Court will review the plaintiffs' constitutional claims under the provisions of Section 1983.

#### i. *Sheriff Sidney J. Hebert*

The underlying alleged constitutional violation the plaintiffs put forth that could arguably be used to support a § 1983 claim is that Sheriff Sidney Hebert and Sheriff's deputies of the Iberia Parish Sheriff's Department deprived them of their Fourth Amendment rights to be free from unreasonable seizures as protected under the Fourteenth Amendment by unlawfully arresting the plaintiffs without probable cause and then forcing them to submit to DNA analysis. The plaintiffs allege that Sheriff Hebert is liable in his official capacity as Sheriff of Iberia Parish and in his supervisory capacity over Sheriff's deputies employed by the Iberia Parish Sheriff's Department. In his official capacity as a representative of Iberia Parish, Sheriff Hebert may be liable under § 1983 only if his actions were in the execution of an unconstitutional parish policy or custom which inflicted injury or damage upon the plaintiffs. *See Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir. 2001); *see also Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. A policy may also be evidenced by custom that is a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Id.* Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined. *See Webster v. City of Houston*, 735

8

F.2d 838, 841 (5th Cir.), on reh'g, 739 F.2d 993 (5th Cir.1984); *see also Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997). While an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the "known or obvious consequences" that constitutional violations would result. *Bd. of County Com'rs of Bryan County, Okl.,* 520 U.S. at 407. The plaintiff must allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of his injury or damage. *See Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992). The plaintiffs have not satisfied this requirement. Based on the record, the plaintiffs have failed to provide any evidence linking any policy implemented by Sheriff Hebert with their alleged injuries. Thus, their claims against Sheriff Hebert in his official capacity are frivolous. Accordingly, any § 1983 claims against Iberia Parish Sheriff Sidney Hebert that the plaintiffs attempted to assert will be dismissed with prejudice.

*ii. The Iberia Parish Sheriff's Department and Iberia Parish Sheriff's Deputies*

Although the plaintiffs fail to name the Iberia Parish Sheriff's Department or any Iberia Parish Sheriff's deputy in their state court petition as party defendants, the Court will analyze the petition based on its allegations of unlawful arrest and seizure.

9

Defendants justify the actions of Agent Buscaino and the Iberia Parish Sheriff's Department on the grounds that the arrests of the plaintiffs were supported by probable cause.

Although not asserted by the defendants, qualified immunity is a threshold issue that must be determined by the Court. Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). State actors are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff carries the burden of proving the inapplicability of the qualified immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The question of qualified immunity involves a two step inquiry. First, a court must "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right." *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194 (2001). "Second, a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable." *Id.* at 467

(citations omitted). The second prong of the qualified immunity test thus involves two separate questions: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). An officers' actions are objectively unreasonable where no reasonably competent officer would find probable cause to arrest the plaintiff. *See Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000). "On the other hand, 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" *Id.* (citations omitted).

Because the existence of a viable constitutional claim is a threshold requirement in order for a plaintiff to overcome the qualified immunity defense, the Court must determine whether the plaintiffs have alleged a violation of a clearly established constitutional right. *See Byers v. City of Eunice*, 157 Fed. Appx. 680, 683 (5th Cir. 2005); *see also Siegert v. Gilley,* 500 U.S. 226 (1991). The Fourth Amendment bestows the constitutional right upon a person to be free from unreasonable seizures of both his person and effects. As to the first prong of the qualified immunity analysis, the Court concludes that the plaintiffs have alleged the violation of a constitutional right; specifically, the plaintiffs allege that they were arrested without a warrant or without probable cause. (*Complaint* ¶ 14). The parties agree that the arrests of the plaintiffs were not incident to the issuance of an arrest

11

warrant.

The next issue for the Court to determine is whether the law was clearly established in March 2004 that it was unlawful for Agent Buscaino and the Iberia Parish Sheriff's Department to arrest the plaintiffs without a warrant based on the available information. Warrantless arrests such as the ones in this case are "a species of seizure required by the [Fourth] Amendment to be reasonable." *New York v. Payton*, 445 U.S. 573, 585 (1980). However, "when probable cause exists to believe that a suspect is committing an offense, the government's interests in enforcing its law outweigh the suspect's privacy interests, and an arrest is reasonable" absent extraordinary circumstances. *Atwater v. City of Lago Vista*, 195 F.3d 242, 244 (5th Cir. 1999). "Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001). A court must consider the "totality of the circumstances" when determining if probable cause exists. *See United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993); *see also Illinois v. Gates*, 462 U.S. 213 (1983).

In determining whether a defendant violated a clearly established constitutional right, "the relevant, dispositive inquiry is . . . whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). In making the arrests, Agent Buscaino relied on: (1) handwriting samples taken from the plaintiffs compared against the writings found on the voodoo doll (*Buscaino depo.*, p. 69); (2) interviews with the plaintiffs that "indicated deception" (*Buscaino depo.*, p. 73); (3) complaints filed by Cargill employees against some of the plaintiffs for alleged intimidation practices at work (*Buscaino depo.*, pp. 22-23); (4) disciplinary reports kept in some of the plaintiffs' personnel files (*Buscaino depo.*, p. 25); and (5) an interview with Creig Eugene's wife (*Buscaino depo.*, p. 27). Additionally, Agent Buscaino conferred with two other Iberia Parish Sheriff's officers, Lieutenant Scott Hotard and Detective Robert Green, before making the decision to arrest the plaintiffs. (*Buscaino depo.*, pp. 25-26). In light of the circumstances surrounding the arrests, the Court concludes that the plaintiffs have failed to carry their burden in establishing that the defendants violated a clearly established constitutional right, the second prong in the qualified immunity analysis as plaintiffs' arrests were supported by probable cause and thus were lawful under the Fourth Amendment. Accordingly, Agent Buscaino and the Iberia Parish Sheriff's Department are entitled to qualified immunity.

As to the plaintiffs' claims that Cargill and David Swisher colluded with Iberia Parish Sheriff's deputies in effectuating their arrests, the Court is not persuaded. The plaintiffs rely on nothing more than allegations and suppositions. Based on the

record, the Court finds that Cargill and David Swisher merely cooperated with law enforcement officers in an on-going investigation into a matter that they considered to be of a most serious nature.

Further, the plaintiffs' claims that their DNA was unreasonably seized by the Iberia Parish Sheriff's Department are also without merit. Through deposition testimony, each of the plaintiffs admitted to voluntarily submitting to DNA analysis. (*Creig Eugene depo.*, p. 35; *Gerald Robertson depo.*, pp. 36-37; *Juanita Smith depo.*, p. 18). Accordingly, the Court holds that the defendants' actions were objectively reasonable and will grant the defendants' motions for summary judgment and dismiss the plaintiffs' unlawful arrest, unlawful seizure, and collusion claims.

## C. State Law Claims

Plaintiffs' remaining claims against Iberia Parish Sheriff Sidney Hebert, David Swisher and Cargill, Inc. are state law causes of action. Although 28 U.S.C. § 1367 confers supplemental jurisdiction over the plaintiffs' state law claims, the assertion of supplemental jurisdiction may be declined if all claims over which the Court has original jurisdiction are dismissed. 28 U.S.C. § 1367(3). "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may refile his claims in the appropriate state court." *Bass v.*

*Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). "The Supreme Court in *United Mine Workers of America v. Gibbs*, emphasized that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.'" *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993) (citation omitted). Because the plaintiffs' federal claims will be dismissed by this Ruling, the Court will not have original jurisdiction over their remaining state law claims. Accordingly, the Court will dismiss the plaintiffs' state law claims without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court will grant the defendants' motions for summary judgment on the plaintiffs' federal law claims and will deny the defendants' motions for summary judgment on the plaintiffs' state law claims. Accordingly, the plaintiffs' federal law claims will be dismissed with prejudice and the plaintiffs' state law claims will be dismissed without prejudice.